STATE *v.* IVAN W. SIMONDS.

November Term, 1935.

Present: POWERS, C. J., SLACK, MOULTON, THOMPSON and SHERBURNE, JJ.

Opinion filed January 7, 1936.

*S. H. Crosby* for the respondent.

*Alban J. Parker,* State's attorney, for the State.

POWERS, C. J.  The respondent was convicted of the careless handling of firearms whereby a woman was shot to death and a man injured.  Sentence was imposed, but suspended pending this review.

The following facts may be treated as established:  On the afternoon of November 29, 1934, Ruth Pratt, carrying a 30-30 rifle, was hunting deer on the mountain near Gaysville, a village in the town of Stockbridge.  Late in the afternoon she fell in with her brother-in-law, Ebenezer Proctor, who was also hunting deer.  Together they walked through the woods toward Gaysville.  They came to a big maple tree which stood at the mouth of a steep gully running down to the cleared land.  They passed down into this gully a distance estimated at 150 to 175 feet.  Proctor was walking along a short distance ahead of Mrs. Pratt, when what he described as "an explosion right next to my ear" took place.  Mrs. Pratt fell dead in her tracks.  Proctor fell unconscious, but almost immediately revived enough to call out as hereinafter stated.

The respondent, carrying a 30-30 Winchester rifle, with several companions, hunted deer on that same mountain, on that same afternoon.  Late in the day having become separated from the other hunters, he made his way down an old road to a point near the mouth of the gully referred to.  His exact position must be determined from the evidence.  He fired his rifle at a deer or what he took to be a deer.  So far, except as to the respondent's exact position when he shot, the evidence presents no material conflict.

It was ascertained by an autopsy that Mrs. Pratt was killed by a bullet which entered her back just below the collar of her outer garment and slightly to the right of the spinal column, passed through the body on a slanting course downward and to the left, and emerged from the chest near the collar bone.  It hit several bones on its way, and after it had passed out of the body, it hit and passed through a white birch sapling about two inches in diameter, and then struck Proctor in the back of the neck making a flesh wound, but not breaking a bone.  The bullet was not found, and the evidence indicates that the hole in

the sapling and the wound on Proctor's neck, may have been made by a fragment of the fatal bullet.

Much of the controversy at the trial was over what kind of a bullet caused the fatality. The respondent was carrying nothing but soft-nosed cartridges that day. It was his theory and claim that the physical facts proved conclusively that a full-jacketed and not a soft-nosed bullet was responsible for Mrs. Pratt's death, and that the size and character of the wound found on her body, and the size and appearance of the hole in the sapling established this fact.

The State produced the white birch sapling with the bullet hole through it, and it was made an exhibit in the case and marked Ex. 9. The respondent also produced white birch saplings of like diameter to Ex. 9, through one of which, marked Ex. G, two 30-30 soft-nosed bullets had been fired from a Winchester rifle, and through which two 30-30 full-jacketed bullets had been fired from the same gun. At the instance of the State's attorney, a witness, in the presence of the jury, channeled lengthwise the path of the bullet in Ex. 9, thus facilitating the examination of the wound in the timber. This was done in connection with the State's rebutting evidence.

When the rebuttal was completed, the respondent asked that one of his experts be allowed to shoot through Ex. 9 one or more 30-30 soft-nosed bullets, using the respondent's rifle at a distance of 125 feet. This request was denied and the respondent excepted.

■■ There was no error in this ruling. What the respondent asked of the court was to allow an experiment to be made further to test the claims of the respective parties as to the character of the bullet which passed through the exhibit. The matter of allowing experiments of this character lies largely in the discretion of the trial court, and its action will not be disturbed on review, unless it clearly appears that the discretion has been abused. *Davis* v. *Raymond,* 103 Vt. 195, 200, 152 Atl. 806. This is according to the well-settled rule of this Court, and it is generally so held. 22 C. J. 756. The rule is especially applicable when, as here, the request is made for the first time in the midst of the trial. *Ball* v. *United States,* 163 U. S. 662, 41 L. ed. 300, 304, 16 Sup. Ct. 1192. The interests of the respondent were not materially affected by the ruling. He had pro-

64

duced and the court had admitted similar saplings with holes in them made by soft-nosed bullets, which the jury could as easily and as effectively compare with the hole in Ex. 9 as if they were all in one sapling. There was no abuse of the court's discretion, and the exception is not sustained.

The respondent also asked to have one of the bullet holes in Ex. G channeled in the same way as the one in Ex. 9 had been. This was refused and the respondent excepted.

■■ This ruling was based upon the ground that the offer did not involve surrebuttal evidence. But the evidence which it was offered to meet was not rebuttal, strictly speaking. The respondent availed himself of the first opportunity afforded him to meet the evidence received against him. Though this application was addressed to a matter ordinarily within the court's discretion, this offer should have been received. The situation was essentially like the one presented in *Phelps* v. *Utley*, 92 Vt. 40, 101 Atl. 1011, where the court allowed a rest to be withdrawn and evidence to be admitted, but denied the other party an opportunity to get witnesses to meet the new evidence. An exception to this refusal was sustained. Here, the character of the bullet that killed Mrs. Pratt was so vital to the defense that it was error to rule against the offer under consideration, and the exception is sustained.

The respondent filed a motion to set aside the verdict on the ground that it was not supported by the evidence, was contrary to the instructions of the court, and was contrary to law. The motion was overruled and the respondent excepted. The excep tion is without merit.

The respondent voluntarily appeared before the grand jury when it was considering the matter of Mrs. Pratt's death, and offered himself as a witness. He had been informed of his rights by his counsel, and fully understood that his statements could be used against him. He there testified to the following effect: He was on his way out of the woods late in the afternoon of the day in question, following an old road and headed in the general direction of Gaysville, when he saw the "flag" of a deer; he walked along down to this gully; he saw a flash of white and thought he saw horns; he shot. He recognized a photograph marked Ex. 4 as a picture of the gully, and remembered the big maple tree shown in the picture near the

upper end of the gully; when he fired, he stood right at the edge of the road near the maple tree, and the deer was running down the gully; he was asked if he fired down into the gully, and answered, "Yes, they told me the day before that it was a good runway." He testified that he thought and knew that Mrs. Pratt was shot. He was then asked, "Know you shot her, don't you?" and he replied, "I am positive it was me." He also testified that it was about a quarter past four o'clock when he fired at the deer, that it was a dark day and getting dusk. He said that immediately after he fired, Proctor shouted, "Hello," and he, the respondent, ran down to where Proctor was on his hands and knees trying to get up; that he helped Proctor get onto his feet and that Mrs. Pratt's body was about 250 feet from where he stood when he fired at the deer.

In the face of these solemn admissions, it cannot be said that the verdict was contrary to the evidence. Nothing more was required to warrant a jury in finding that this respondent fired the fatal shot. The questions of negligence and proximate cause were, of course, to be settled, and obviously were settled by findings adverse to the respondent and on sufficient evidence.

Moreover, the State investigator, Franzoni, testified that on an occasion specified, the respondent told him that he looked down the gully, thought he saw a deer, and pulled up and shot. And Sheriff Schoenfeld testified that the respondent told him that "he did it"—referring to the shooting.

That all these admissions were evidence of the facts stated, cannot be denied. *Robinson* v. *Leonard*, 100 Vt. 1, 5, 134 Atl. 706; *Blanchard* v. *Paltiel*, 106 Vt. 510, 513, 175 Atl. 226.

It is true that at the trial before the petit jury, the respondent told a very different story—one that would make it doubtful, to say the least, that he was to blame for Mrs. Pratt's death. But it was for the jury to say which of the two versions given by the respondent it would accept as the truthful one. The exception cannot be sustained. Other exceptions were taken at the trial, but are not briefed.

*Judgment reversed, and cause remanded.*