2012 VT 58

## Stephen J. Pcolar v. Casella Waste Systems, Inc. a/k/a All Cycle Waste and Robert Smith

[59 A.3d 702]

No. 11-116

Present: **Reiber, C.J., Dooley, Skoglund, Burgess and Robinson, JJ.**

Opinion Filed July 27, 2012

Motion for Reargument Denied August 28, 2012

Motion for Reconsideration Denied October 2, 2012

344

*Stephen Pcolar*, Pro Se, South Burlington, Plaintiff-Appellant.

*Walter E. Judge, Jr.* and *Jennifer E. McDonald* of *Downs Rachlin Martin PLLC*, Burlington, for Defendants-Appellees.

¶ 1. **Skoglund, J.** Plaintiff Stephen J. Pcolar appeals from a Chittenden Superior Court verdict in favor of defendant Casella Waste Systems, Inc. Plaintiff filed suit alleging negligence in connection with an incident where the gripper arm of a garbage truck owned by Casella and operated by defendant Robert Smith struck plaintiff. The superior court charged the jury to compare the negligence of the parties, and the jury returned a verdict assigning seventy percent of the causative negligence to plaintiff, barring any recovery. We affirm.

¶ 2. The details of the incident that gave rise to this litigation, though disputed to some degree, are relatively straightforward.

On May 26, 2005, plaintiff was helping a friend clean the garage of his condominium in South Burlington. Plaintiff was cutting cardboard boxes into flat sheets. Around 2 p.m., an All Cycle Waste (a subsidiary of defendant) garbage truck arrived to pick up trash containers on a standard route through the development. Either plaintiff or the condominium owner asked the truck driver, defendant Smith, if the cardboard sheets could be added for disposal; the driver agreed.

¶ 3. The garbage truck was equipped with a single gripper arm on the side of the vehicle, designed to pick up a standard ninety-six-gallon container from the curb, lift it above the truck, empty the contents of the container into the top of the truck, and return the container to the ground. The truck driver instructed plaintiff to lay the sheets on top of the horizontal gripper arm. The plan was to carry the cardboard sheets on top of the arm and drop them into the opening on top of the truck. Plaintiff stacked the cardboard sheets on top of the arm. As the arm rose, some of the sheets fell to the ground. Plaintiff then moved close to the truck and attempted to pick up some of the fallen cardboard. Although the parties contest the precise details of the accident that followed, we need not evaluate the competing factual narratives. It is sufficient for our purposes to say that plaintiff was struck by the gripper arm as it descended.

¶ 4. In May 2008, plaintiff filed a complaint pro se in the trial court against defendants. Plaintiff claimed the blow by the gripper arm caused injury to his head, neck, shoulder, and back. He alleged that the driver was negligent in operating the mechanical gripper arm, directly causing the injury for which he sought damages. After a two-day trial, the jury was charged on comparative negligence and returned a verdict finding plaintiff seventy percent liable and defendants thirty percent liable. Under Vermont law, this barred any monetary recovery for plaintiff. Plaintiff appeals.

¶ 5. Plaintiff raises ten arguments on appeal. First, he alleges that the jury verdict was not adequately supported by the evidence. After reviewing the record, we conclude that there is sufficient evidence to support the jury's verdict. The jury heard testimony only from plaintiff and driver. These narratives present conflicting views on the specifics of the incident, each supporting a different attribution of fault. In light of the conflicting testimony,

the jury assigning seventy percent of the liability to plaintiff is reasonable. See *B & F Land Dev., LLC v. Steinfeld*, 2008 VT 109, ¶ 10, 184 Vt. 624, 966 A.2d 127 (mem.) ("It is black-letter law that assessing witness credibility and weighing the evidence are the unique province of the jury.").

■■ ¶ 6. In a related argument, plaintiff contends that because he submitted the 178-page transcript of his four-hour deposition in lieu of live testimony, the relatively short deliberation time (one-and-a-half hours) evidences the jury did not read it in its entirety. Even if plaintiff's hypothesis that the jury did not read every page of the deposition is correct, this would not amount to reversible error. "There is no law which requires a jury to deliberate any longer than may be necessary to agree upon a verdict." *State v. Morrill*, 127 Vt. 506, 509, 253 A.2d 142, 144 (1969); accord *Jackson v. Rogers*, 120 Vt. 138, 150, 134 A.2d 620, 627 (1957) ("If the verdict can be justified upon any reasonable view of the evidence, it must stand."). The trial court *may* cause the jury to reconsider the evidence if it appears that the verdict was decided with undue haste, "indicat[ing], in the circumstances, either a flippant disregard or a perfunctory performance of their duties." *State v. Lumbra*, 122 Vt. 467, 470, 177 A.2d 356, 358 (1962). This is not the case here. A one-and-a-half-hour deliberation is sufficient time for a jury to assign fault in a simple negligence case such as this.

¶ 7. Contrary to plaintiff's briefing of the matter, plaintiff was not encouraged to submit the deposition transcript in lieu of his own live testimony. Indeed, it was plaintiff who first suggested to the court that he could submit the deposition instead of presenting his story in a monologue to the jury. The trial judge repeatedly asked plaintiff if he was sure about his decision to supplant his own live testimony with the transcript of his deposition. Although choosing not to testify as his own witness, plaintiff did have the opportunity to tell his story to the jury. At the conclusion of defendants' cross-examination of plaintiff, the trial judge asked plaintiff if there was anything he would like to add. Plaintiff then gave his full version of how the accident happened. The jury had adequate opportunity to hear the differing versions from each side. The verdict is well supported by the evidence and will not be reversed by this Court.

¶ 8. Plaintiff's next argument on appeal is that the judge erred in denying his motion to bring an actual garbage truck to the

court parking lot for the jurors to inspect. Plaintiff argues that this constitutes reversible error. It does not. This motion was properly denied by the trial court.

¶ 9. Vermont Rule of Evidence 403 allows the judge to exclude relevant evidence when "its probative value is substantially outweighed . . . by considerations of . . . waste of time, or needless presentation of cumulative evidence." Trial judges enjoy broad discretion in applying Rule 403 to evidentiary matters. *Quirion v. Forcier*, 161 Vt. 15, 21, 632 A.2d 365, 369 (1993); *State v. Percy*, 158 Vt. 410, 415, 612 A.2d 1119, 1123 (1992); *State v. Larose*, 150 Vt. 363, 368, 554 A.2d 227, 231 (1988). Plaintiff, in addition to procuring testimony as to the mechanics of the arm from the truck driver, presented a video of the gripper arm in operation to the jury. The judge acted within her discretion when she determined that a jury view of the actual garbage truck was needless, cumulative evidence to demonstrate the mechanical operation of the arm — a point already supported by testimony and the video. Further, there was no dispute regarding the mechanics of the gripper arm. The trial judge has discretion to refuse cumulative evidence. See *State v. Simonds*, 108 Vt. 60, 63-64, 182 A. 185, 186 (1936) (holding that in-court shooting demonstration into original sapling was unnecessary where jury already had evidence of holes in birch saplings). The trial court did not err by refusing to grant the plaintiff's motion to require defendants to bring a garbage truck to court.

¶ 10. Plaintiff's next claim of error concerns pretrial discovery. Plaintiff moved to depose eight witnesses. The trial judge permitted plaintiff to depose three of the requested eight, and denied the request to depose five individuals listed in the motion to compel. Plaintiff argues that denying the depositions of the remaining five constitutes error. We disagree. Of the five individuals whose depositions were denied, only two warrant individual discussion: Casella Waste Systems's CEO and its counsel. The remaining three potential deponents are discussed as a group.

¶ 11. In reviewing the decision to deny the motion to compel depositions, "[w]e apply a deferential standard of review to trial court rulings on discovery, which are left to the sound discretion of the trial judge." *Schmitt v. Lalancette*, 2003 VT 24, ¶ 9, 175 Vt. 284, 830 A.2d 16. "Discovery rulings such as this are discretionary, and discretionary rulings are not subject to review if there is a

reasonable basis for the court's action." *Record v. Kempe*, 2007 VT 39, ¶ 9, 182 Vt. 17, 928 A.2d 1199 (quotations omitted). This Court will not disturb a trial court's discovery ruling absent an abuse of discretion. *Chrysler Corp. v. Makovec*, 157 Vt. 84, 89, 596 A.2d 1284, 1287 (1991).

¶ 12. The CEO was the first person named in the motion to compel depositions. Plaintiff stated that the purpose of the deposition was to reveal the CEO's alleged offer to pay medical expenses resulting from the incident. Vermont Rule of Evidence 409 provides that "[e]vidence of furnishing or offering or promising to pay medical . . . expenses occasioned by an injury is not admissible to prove liability for the injury." As plaintiff argues in his brief, he wanted to depose the CEO to show that he offered to settle the case. This is precisely what Rule 409 was designed to preclude. Further, plaintiff stated at trial that he had spoken with the CEO the day after the incident. The jury was already aware that plaintiff had contacted the CEO the day after the accident. The fact of the two having a conversation was already in evidence, and the substance of that conversation is inadmissible. Accordingly, this deposition was properly excluded.

¶ 13. Plaintiff also moved to depose counsel for defendants. Although plaintiff devoted two lines on the final page of his timely motion to the relevance of deposing opposing counsel, he did not include the name of the attorney in the title block. An amended motion that included the name of the attorney was submitted the next day. The judge determined that, as the name was not included in the title block of the timely motion (although still in the body of the document), the motion was untimely. Plaintiff argues that this amounts to reversible error. It does not.

¶ 14. We do not address the question of whether a litigant must include each deponent in the title block for the motion to be properly filed. It is sufficient for our analysis to say that this discovery ruling amounts to harmless error, if any. Plaintiff devoted one sentence to the relevance of deposing opposing counsel in the entire nineteen-page document, stating only that he believed the attorney possessed information "need[ed] to review prior to other depositions." With such a minimal proffer of probative value, the trial court judge would have been well within her discretion under Vermont Rule of Evidence 403 to exclude the request for reasons of undue delay or cumulative effect.

■ ¶ 15. For the three remaining witnesses, the court denied the motion "either because they seek work product . . . or because the court cannot understand what relevance their testimony would have." Even with the low standard of relevance set forth by Vermont Rule of Evidence 401 (providing that evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable"), the trial judge may still exclude relevant evidence for other reasons. These reasons include "considerations of undue delay, waste of time, or needless presentation of cumulative evidence." V.R.E. 403. With the garbage truck driver available to testify, the probative value of deposing individuals who may have had access to accident reports is minimal at best. Plaintiff's burden of showing the trial judge abused her discretion is a heavy one. *Quirion*, 161 Vt. at 21, 632 A.2d at 369. He has not met it here.

¶ 16. Plaintiff also alleges error in a separate discovery ruling. The trial court found to be moot plaintiff's motion to compel disclosure of the recorded interview of the truck driver conducted by the insurance adjuster for Casella's insurance carrier. Casella's insurance adjuster apparently interviewed truck driver twenty days after the incident. Plaintiff sought the audio recording of this interview, claiming the interview would reveal inconsistencies in the testimony presented at trial. Defendants produced a written summary of the interview, but withheld the actual recording, claiming the attorney work-product privilege. With the production of the summary, the trial court held this issue moot.

■ ¶ 17. It is well settled that "[r]eports prepared for counsel in connection with litigation constitute the attorney's work product and are immune from discovery absent compelling circumstances." *Hartnett v. Med. Ctr. Hosp. of Vt.*, 146 Vt. 297, 299, 503 A.2d 1134, 1135 (1985) (citing *Hickman v. Taylor*, 329 U.S. 495 (1947)). Pursuant to Vermont Rule of Civil Procedure 26(b)(3), this protection extends to documents prepared in anticipation of litigation by or for another party's representative, including documents prepared by or for the other party's insurer or agent. However, the work-product privilege is not absolute; it is a qualified privilege subject to override "upon a showing that the party seeking discovery has substantial need of the materials in the preparation of the party's case and that the party is unable without undue hardship to obtain the substantial equivalent of the

materials by any other means." V.R.C.P. 26(b)(3). In cases in which a court does order disclosure of work-product materials, "the judge shall protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of an attorney or other representative of a party concerning the litigation." *Id.*

¶ 18. We do not agree that a written summary of the content of an interview is the same as the actual recording of the interview. Accordingly, the trial court erroneously decided this issue on mootness. However, despite this error, the outcome was correct. Given the record before this Court, the work-product privilege protects this recording from discovery. The record reflects that plaintiff placed a call to the CEO of Casella the day after the incident. Plaintiff represented to the court that the purpose of this call was to tell the CEO about the incident; the record further reflects that plaintiff and the CEO discussed payment of plaintiff's medical records during that call. In light of the evidence, it is reasonable to conclude that the interview in question, conducted by the insurance adjuster nineteen days after plaintiff contacted the CEO about the incident, was conducted in anticipation of litigation, and would thus be subject to the qualified privilege in V.R.C.P. 26(b)(3). Further, plaintiff failed to explain to the court below or on appeal what "substantial need" he had of the materials. While we do not agree that the request was moot due to the production of a summary, plaintiff also failed to explain why the summary was not "the substantial equivalent of the materials" sought. Although contemporaneous recorded witness statements may in some cases meet a substantial discovery need that cannot otherwise be met, on the record before us, we cannot conclude that plaintiff had made the necessary showing to overcome the qualified privilege.

¶ 19. Further, plaintiff's briefing of this issue on appeal is inadequate. In two short sentences, he simply argues that the judge erred in ruling the motion moot since he wanted the recording, not the written summary. Even with the "wider leeway" afforded to pro se litigants, *Sandgate Sch. Dist. v. Cate*, 2005 VT 88, ¶ 9, 178 Vt. 625, 883 A.2d 774 (mem.), this argument does not meet the minimum standards required by Vermont Rule of Appellate Procedure 28(a)(4). Accordingly, there is no reason to disturb the trial court's ruling on this issue.

¶ 20. Plaintiff next argues that the trial court erred in denying his motion to reset the jury draw and trial date and his motion to continue. The jury draw in this case was scheduled for December 14, 2010. The day before the jury draw, plaintiff filed a motion to reset the jury draw and the trial date scheduled for February 2011. The trial judge denied the motion, ruling in part that plaintiff had "been aware of the need to proceed on this date . . . for a long time." Plaintiff then filed a motion to continue shortly before the trial was scheduled to commence. He explained that he had just hired an attorney, but that the attorney would be unavailable for the scheduled trial dates. The court denied the motion, ruling that this case had been pending for over two-and-a-half years, and that plaintiff was requesting a continuance of the trial seven days before it was to commence due to the unavailability of a newly hired lawyer who had not even filed a notice of appearance. We give trial judges broad discretion to manage their dockets. *In re Vt. Supreme Court Admin. Directive No. 17*, 154 Vt. 392, 402, 579 A.2d 1036, 1041 (1990); see also V.R.C.P. 16.2. We cannot conclude that the trial court abused its discretion in denying plaintiff's motions to continue.

¶ 21. Plaintiff next claims that the trial court erred in admitting evidence and testimony relevant to his previous real estate business and his prior and pending litigation. Plaintiff did not object to these points at trial, nor did he object to the admission of related exhibits. The rules of evidence are not self-executing; preserving an issue for appeal requires a timely objection. Absent a timely objection, we consider plain error in civil cases "only in limited circumstances, i.e., when an appellant raises a claim of deprivation of fundamental rights, or when a liberty interest is at stake in a quasi-criminal or hybrid civil-criminal probation hearing." *Follo v. Florindo*, 2009 VT 11, ¶ 16, 185 Vt. 390, 970 A.2d 1230 (citations omitted). Accordingly, the evidentiary rulings of the trial court will not be upset here.

¶ 22. Plaintiff next contends that defendants' opening statement was improper. Plaintiff made a very brief opening statement. Defendants followed with a lengthier address, and then proceeded to state what they anticipated the evidence to show. Plaintiff claims that he was entitled to a response in kind to defendants' remarks. Plaintiff objected twice during the opening remarks, stating that his view of what the evidence would show was markedly different than the version opposing counsel was present-

ing. Each time, at sidebar, the court informed plaintiff that this type of opening statement was proper, and that plaintiff would likewise have an opportunity to present evidence for the jury's contemplation.

¶ 23. "The law indulges a liberal attitude toward comments which are a fair retort or response to the prior argument of opposing counsel." 75A Am. Jur. 2d *Trial* § 470 (2007). However, plaintiff has not specified any allegedly false statement, instead only arguing generally that there were "false statements . . . during [opposing counsel's] lengthy remarks." Accordingly, plaintiff's argument fails.

¶ 24. Plaintiff's next argument is that the trial court erred in denying his *Daubert* motion to limit the testimony of his own expert neuropsychologist. See *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579 (1993). Specifically, plaintiff's motion sought to suppress the portion of his neuropsychologist's expected testimony that would suggest plaintiff did not put forth maximum effort during his diagnostic testing, indicating that plaintiff was malingering in order to affect the outcome of the tests. Plaintiff claims that, as the expected testimony of plaintiff's malingering was not grounded in science, it should be excluded.

¶ 25. The trial judge rules on admissibility of expert testimony and that decision is reviewed for abuse of discretion only. See *985 Assocs. v. Daewoo Elecs. Am., Inc.*, 2008 VT 14, ¶ 7, 183 Vt. 208, 945 A.2d 381. Vermont Rule of Evidence 702 provides in relevant part: "If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto . . . ."

¶ 26. Although plaintiff contends the opposite, expert testimony need not be scientific. Rule 702 does not distinguish between scientific and other specialized knowledge. *985 Assocs.*, 2008 VT 14, ¶ 7. Assuming, arguendo, that a doctor's opinion of a patient's malingering was not scientific for purposes of Rule 702, the trial court could still allow such testimony on the grounds that it is particularly within the "knowledge, skill, experience, training, or education" of a neuropsychologist.

¶ 27. The trial judge had the sworn deposition of one doctor — the neurologist with whom plaintiff first consulted after

the incident and who referred plaintiff to a neuropsychologist for further evaluation — before her when the motion was filed. This deposition was, in part and without objection, later read into evidence for the jury. Several times throughout the deposition, the neurologist vouched for the neuropsychologist's medical qualifications, and specifically her ability to interpret and apply "validity markers," or indications that plaintiff was not putting forth maximum effort during his psychological evaluations. As elicited at trial, these validity markers are well-accepted, proven means to identify potential lack of effort while conducting tests to diagnose mild brain injuries. The neuropsychologist's opinion concerning plaintiff's malingering was for the jury's consideration — it was not dispositive of that point, and did not preclude plaintiff offering additional evidence to the contrary. The neuropsychologist's expert testimony was properly admitted, and refusing to limit the testimony and exclude relevant information regarding plaintiff's purported lack of effort during the examinations was not an abuse of discretion.

¶ 28. As a final matter, plaintiff makes two distinct arguments concerning jury instructions that he claims were inappropriate. He first contends that the jury should have never been instructed on comparative negligence as a matter of law. The second argument is that the jury instructions were "not clear and concise."

¶ 29. The question of erroneous jury instructions is not properly before us. For an issue to be preserved for appeal, it must be raised by a party at trial. Vermont Rule of Civil Procedure 51(b) controls the process for objecting to jury instructions: "No party may assign as error the giving or the failure to give an instruction unless that party objects thereto before the jury retires to consider its verdict, stating distinctly the matter objected to and the grounds of the objection." For plaintiff to raise this issue on appeal, he must have objected after the judge read the instructions to the jury and before the jury retired for deliberation. A review of the record shows that he did not. Plaintiff, when asked if he had any objections to the proposed final jury instructions during the lunch hour of the second day, answered in the negative. He similarly refused an offer to suggest amendments to the proposed language. At the conclusion of the jury charge, plaintiff did not object to the instructions. Accordingly, this issue is not preserved for appeal. See *Florindo*, 2009

VT 11, ¶ 16 (explaining that absent timely objection, argument is only considered in limited circumstances).

*Affirmed.*