*Note: Decisions of a three-justice panel are not to be considered as precedent before any tribunal.*

## ENTRY ORDER

SUPREME COURT DOCKET NO. 2014-316

APRIL TERM, 2015

| | | |
|---|---|---|
| Kristen E. Brosnahan | } | APPEALED FROM: |
| | } | |
| | } | Superior Court, Orange Unit, |
| v. | } | Family Division |
| | } | |
| | } | |
| William J. Brosnahan | } | DOCKET NO. 95-5-12 Oedm |

Trial Judge: Robert P. Gerety

In the above-entitled cause, the Clerk will enter:

Father appeals from a final divorce judgment of the superior court, family division. He contends the court erred in: (1) denying a motion for continuance; (2) awarding mother sole parental rights and responsibilities; and (3) dividing the marital estate. We affirm.

The facts may be briefly summarized. Additional material facts will be set forth in the discussion that follows. The parties were married for nineteen years and had two children who were sixteen and fourteen years old at the time of the final hearing. Shortly after they married, mother sold a property that she had inherited for $93,000, and the parties moved into a camp owned by father that they proceeded to renovate. Mother has the equivalent of a high school education and worked exclusively in the home throughout the marriage. Mother home-schooled the children until shortly after the parties separated in 2012. Father was employed as a skilled worker commuting to a job in Massachusetts and earning approximately $70,000 to $80,000 annually. The trial court found that the parties' relationship was often volatile, and remained contentious after their separation.

The court awarded mother sole parental rights and responsibilities and provided parent-child contact with father every other weekend and alternating holidays. The parties' principal assets were the marital home and several Fidelity investment accounts owned by father. The court determined that a "roughly even division of the marital property" would be fair and equitable. It ordered the marital home to be sold and the net proceeds after payment of the mortgage and taxes to be divided evenly between the parties. It also divided the investment accounts, with the first $47,500 to be awarded to mother, because father had already drawn $47,500 more from the account than mother, and the balance to be divided evenly. This appeal by father followed.

Father first contends the court erred in denying his motion to continue the trial for the purpose of allowing him to obtain an attorney. The record shows that father was represented by counsel until May 2013, at which time the court granted his attorney's motion to withdraw and father filed a notice of pro se appearance. In late October 2013, notice was sent to father that a contested divorce hearing had been scheduled for January 9 and 10, 2014. On January 7, 2014,

two days before trial, father filed a motion to continue, indicating that, due to the complexities of the case, he had sought legal counsel and that "the legal counsel I have has court in Grand Isle on the 9, 10 of this month." Father did not identify the attorney in question, and no appearance by any attorney had been filed on his behalf. The court denied the motion, noting that father had received timely notice of the hearing, that two days had been set aside for the hearing, and that judicial resources were extremely limited.

"A decision to grant or deny a continuance is a discretionary matter and will not be disturbed unless there is shown an abuse of discretion which causes prejudice." Finkle v. Town of Rochester, 140 Vt. 287, 289 (1981); see also Kohut v. Kohut, 164 Vt. 40, 45 (1995) (holding that court did not abuse its discretion in denying motion to continue to obtain counsel). The court's discretion to manage its docket, set deadlines, and allocate its resources is equally broad, and subject to reversal only for an abuse of discretion. Pcolar v. Casella Waste Sys., Inc., 2012 VT 58, ¶ 20, 192 Vt. 343.

The record here amply supports the trial court's ruling. Father had a full eight months from the time of his attorney's withdrawal until the date of trial, and three-months' notice of the scheduled trial date to obtain counsel. Father's motion, filed on the eve of trial, provided no explanation for his failure to obtain counsel during this period, and the suggestion that he had an attorney who had a trial conflict was entirely unsupported. Under the circumstances, we find no basis to conclude that the court abused its discretion in denying the motion.

Father's claim that he was unduly prejudiced by the court's ruling is also unpersuasive. The disadvantages he cites in dealing with questions of evidence and procedure at the hearing were no different from those confronted by any self-represented party. Moreover, the record discloses that the trial court assisted father during the hearing in every way that it could.[1] This is evident from the record surrounding father's principal claim of prejudice—the court's exclusion on hearsay grounds of two "psycho-educational assessments" of the parties' children. Father claims that the assessments showing certain educational delays would have demonstrated that mother was negligent in home-schooling the children. Although the court sustained an objection to the admission of the assessments, it sought to mitigate the ruling for father's benefit by allowing the parties to stipulate that, at the time they enrolled in public school, "both of [the children] were below grade level in more than one academic area." Accordingly, we find no basis to disturb the court's continuance ruling.

Father next contends the trial court erred in awarding mother sole physical and legal rights and responsibilities and in reducing his parent-child contact. Our review is limited. When considering a trial court's award of parental rights and responsibilities, "this Court applies a highly deferential standard of review." Hanson-Metayer v. Hanson-Metayer, 2013 VT 29, ¶ 12, 193 Vt. 490. "In the highly fact-intensive context of a custody determination, we rely on the family court's determinations of fact and evaluations of credibility." Id. (quotation omitted).

---

[1] Father's passing claim that the court "actively discouraged" his cross-examination of mother, "cut off cross-examination," and "discouraged" his objections is not supported by the record. On the contrary, those parts of the record on which he relies show that the court explained to father that he was not required to cross-examine but "if you wish to, this is the time for you to do so," offered father every opportunity to cross-examine, and carefully explained in overruling several of father's objections that father's disagreement with the witness or belief that "the testimony is inaccurate or untruthful is not a basis to state an objection."

Accordingly, the court's findings "will stand if any reasonable and credible evidence supports them." Id. (quotation omitted).

Although not clearly delineated in his brief, father's claims concerning the custody award appear to be several. First, he contends the trial court erred in finding that father did not seek an award of sole or primary parental rights and responsibilities. The claim is entirely immaterial. The court recognized that father's statements at trial as to what was he was actually seeking were somewhat unclear; therefore, the court expressly held that, "[r]egardless of Father's decision and statements in this regard, the Court concludes that the evidence supports an award of parental rights and responsibilities solely to Mother." Thus, whatever concession father may have made did not figure in the court's decision.

Father further asserts that the court improperly relied "solely on the fact that" mother was the children's primary care provider, and "completely ignore[d]" evidence of the children's affectionate relationship with father. As father notes, the primary-care-provider criterion is entitled to "great weight" but is not alone dispositive. Payrits v. Payrits, 171 Vt. 50, 54 (2000). The court here did not, however, rely solely on this finding. In addition to finding that mother had been the children's primary care provider "all their lives," the court also relied on findings that she had "an excellent relationship with both children" while father's had been "difficult" and "abusive." The court also found that "the substantial conflict and hostility between the parties" strongly supported vesting sole responsibility in one party to avoid ongoing disputes. Neither does the record support father's claim that the court ignored evidence of his affectionate relationship with the children. While noting the "significant difficulties in the relationship between the children and [father]," the court also recognized his strong love for the children and found that "their relationship ha[d] improved significantly since the separation and [father] now has a good relationship with both children." Accordingly, we find no merit to father's claims.

Father next contends the court erred in finding no "significant differences" in the parties' abilities to meet the children's "material" and "developmental" needs. See 15 V.S.A. § 665(b)(2), (3), (5). Father cites evidence that mother was unemployed throughout the marriage while he had been consistently employed as a skilled worker earning a good wage. There was no basis to conclude, however, that with adequate financial support from father and additional time to find employment mother would be any less able than father to meet the children's material needs. Father also cites the children's delayed educational progress as evidence of mother's inability to meet the children's developmental needs.[2] Although, as noted, there was some evidence that the children had fallen behind a grade level during their home schooling, this was insufficient to demonstrate that mother could not attend at least as well as father to the children's developmental needs, which, for older children, encompass not only their academic achievement but also their ability to adapt and thrive in their school, social, and community environments. We thus find no basis to disturb the court's findings.

Father further contends the evidence was insufficient to support the court's finding that mother was capable of making decisions regarding the children's schooling and providing them with the support they need, particularly in the event that they moved to New Hampshire or Massachusetts as mother had intimated. To the extent that the argument is again based on concerns about the children's home schooling, father overlooks the court's additional finding

_____

[2] In support of this claim, father cites to several documents that were not part of the record and concern events occurring after the hearing, and we therefore do not rely on them in our decision.

3

that further home schooling was not in the children's best interests, and that the court would treat any decision by mother to home school them as a substantial change of circumstances sufficient to support a modification motion.[3]

Lastly in this regard, father contends the trial court erred in reducing his parent-child contact from the first three weekends in each month, as provided in the temporary order, to every other weekend. The court found that the maximum amount of visitation with father, consistent with the parties' schedules and circumstances, was in the children's best interests. In addition to the weekends, the court also provided for contact during alternating holidays and for two separate weeks during the summer, which were not provided for in the temporary order. Although father maintains that the revised visitation schedule will "erode or destroy" his relationship with the children, he does not show how the reduction of one weekend per month was seriously prejudicial or an abuse of the court's discretion.

Father next contends the court's division of the marital property "ignor[ed] the record" and misapplied the statutory factors. Again, our review is narrow. "The disposition of property pursuant to a divorce decree is a matter of wide discretion for the trial court." Hanson-Metayer, 2013 VT 29, ¶ 52. We will not disturb the court's decision unless it is shown that its discretion "was abused, withheld or exercised on untenable grounds or to a clearly unreasonable extent." Id. (quotation omitted).

Father first suggests that the court erred in finding that fault was not a factor in its decision. Father refers to the court's exclusion of what appeared to be a page from a dating website, and the children's educational assessments. Father does not show how the court's evidentiary rulings were erroneous, nor how they prejudiced the property distribution. Accordingly, we find no error.

Father next contends the court "distort[ed] the reality that the marital residence was brought into the marriage by [father]," and erred in finding that wife made substantial non-monetary contributions to the construction and maintenance of the home. Although the marital residence was built on property owned by father, there was evidence that proceeds from the sale of mother's former residence were used by both parties for ordinary living expenses during the construction of their home, and that mother worked directly on its construction, helping with framing, putting up sheet rock, and painting. Accordingly, we find no error. Father also faults the court's finding that the source of the funds in his Fidelity accounts was "not clear." He asserts that this is "belied by the record." Although the trial court stated that the source of the Fidelity accounts was not clear, it also stated, "[I]t appears that most, if not all, of the funds in the accounts were either brought to the marriage by Defendant, were deposited by Defendant during the marriage from his earned income, or were inherited by Defendant before or during the marriage." The court accordingly based its property division on an assumption that father was the source of the retirement account funds. Father shows no prejudice from the court's statement that its findings on this point were not entirely clear. Accordingly, we find no basis to disturb the court's findings.

Father further asserts that the court erred in awarding mother the "first $47,500 from the Fidelity accounts to equalize the distributions." As noted, the trial court had determined to

---

[3] Neither father nor mother have challenged the court's ability to make such an order. As in other instances, father cites to certain documents outside the record in an attempt to show events that transpired after the hearing. We do not rely on this material.

4

generally divide the property on an equal basis, but awarded mother the first $47,500 from the distribution of the Fidelity accounts in recognition of father's earlier withdrawal of funds from the accounts. In essence, the court departed from its generally equal property division with respect to the Fidelity account in recognition of the fact that father had, during the temporary period, benefitted from his withdrawals from that account to a much greater extent than mother. The trial court did not treat the spent money as part of the marital estate subject to equitable division, as in Felis v. Felis, 2013 VT 32, ¶ 11, 193 Vt. 555. Rather, it opted to award wife a disproportionate share of the retirement account funds that remained because husband had already benefitted disproportionately from the funds. Father's assertion that the additional $47,500 awarded to wife was unsupported by the evidence also lacks merit.

Finally, father contends the court improperly awarded mother certain personal property enumerated on a list submitted to the court without a proper explanation. Father does not identify any item on the list that was improperly awarded to mother or that should have been awarded to husband, or divided. Accordingly, we find no basis to disturb the judgment.[4]

Affirmed.

BY THE COURT:

_____
Paul L. Reiber, Chief Justice

_____
John A. Dooley, Associate Justice

_____
Beth Robinson, Associate Justice

---

[4] Father's argument, set forth in one sentence, is that the court improperly failed to consider the relationship between the property and maintenance awards. The argument is inadequately briefed, and does not assert, let alone demonstrate, how father was prejudiced by the alleged error. Accordingly, we do not address it.