**Sheila A. Hartnett, Individually, and Sheila A. Hartnett, Administratrix of the Estate of John J. Hartnett v. Medical Center Hospital of Vermont, E. Douglas McSweeney, Jr., M.D., and Allen W. Leadbetter, M.D.**

[503 A.2d 1134]

No. 82-577

Present: Hill and Peck, JJ., and Keyser and Daley, JJ. (Ret.), and Meaker, Supr. J., Specially Assigned

Opinion Filed September 20, 1985

*McNeil, Murray & Sorrell, Inc.*, Burlington, for Plaintiff-Appellant.

*John M. Dinse, Michael B. Clapp*, and *Austin D. Hart* of *Dinse, Allen & Erdmann*, Burlington, for Defendant-Appellee Medical Center Hospital.

*Robert D. Rachlin, Priscilla K. Reidinger*, and *James W. Runcie* of *Downs Rachlin & Martin*, for Defendant-Appellee McSweeney.

*William H. Quinn* of *Pierson, Affolter & Wadhams*, Burlington, for Defendant-Appellee Leadbetter.

**Hill, J.** Plaintiff, Sheila Hartnett, appeals from an adverse judgment rendered in an action against defendants for medical negligence. We affirm.

In 1974, plaintiff's decedent, John J. Hartnett, underwent vascular bypass surgery. The surgery was performed by Drs. McSweeney and Leadbetter at the Medical Center Hospital of Vermont. The hospital and the two surgeons are the defendants in this action. Sometime either during or following surgery, Mr. Hartnett's esophagus was perforated. The perforation was first diagnosed five days after the operation. Emergency surgery to remove the damaged portion of the esophagus, and replace it, was

performed the following day. Because of the repair to the esophagus, Mr. Hartnett suffered from a condition whereby food from his stomach was regurgitated and aspirated into his lungs causing recurring pulmonary complications known as aspiration pneumonitis. He died in 1978 from pulmonary complications caused by aspiration pneumonitis.

Plaintiff sued defendants for medical negligence claiming that they were negligent in Mr. Hartnett's post-operative care, and that the defendants thereby negligently failed to make a timely diagnosis of Mr. Hartnett's perforated esophagus. Plaintiff claimed that Mr. Hartnett's death was a direct and proximate result of defendants' alleged negligence.

Plaintiff makes three claims of error on appeal. First, the plaintiff claims that the trial court erroneously refused to return a document to the plaintiff which the court determined was protected from disclosure because it was the work product of one of the defendant's attorneys. Second, the plaintiff claims the court erred in failing to exclude the expert opinion testimony of three witnesses whose identity as expert witnesses had not previously been disclosed to the plaintiff. Third, the plaintiff claims the trial court's charge to the jury was erroneous.

## I.

Plaintiff's first claim concerns the use of a typewritten report prepared by a resident at the hospital at the request of the hospital's attorney. (Exhibit 4-B-2). The report is essentially an abstract of the medical records concerning the treatment of Mr. Hartnett. A copy of 4-B-2 was accidently included in the radiology files on Mr. Hartnett, and got into the plaintiff's possession when the plaintiff requested production of Mr. Hartnett's x-rays.

Reports prepared for counsel in connection with litigation constitute the attorney's work product and are immune from discovery absent compelling circumstances. *Hickman* v. *Taylor*, 329 U.S. 495 (1947); V.R.C.P. 26(b)(4)(B). There was sufficient evidence considered by the trial court for it to find that 4-B-2 constituted the work product of the hospital's attorney.

The plaintiff claims, however, that even if 4-B-2 is the attorney's work product, it was not immune from discovery. The plaintiff claims that the hospital's attorney waived the privilege of claiming immunity from discovery by handling the document in a

manner which substantially increased the opportunity for adversaries to obtain the information. See *United States* v. *American Telephone & Telegraph Co.,* 642 F.2d 1285, 1299 (D.C. Cir. 1980) (work product privilege waived by disclosure which substantially increases possibility that opposing party will obtain information); 8 C. Wright & A. Miller, Federal Practice and Procedure § 2024 (1970); Note, *Developments in the Law-Discovery,* 74 Harv. L. Rev. 940, 1044-45 (1961).

■ The trial court, however, examined the evidence presented to it and determined that "there was no credible showing that [the hospital's attorney] handled the memorandum in such a way as to know it would be disclosed to plaintiffs' attorney." The hospital's counsel never authorized or knew that 4-B-2 was included in the radiology file. In fact, the hospital's attorney believed that the only copy of 4-B-2 was in his file. He had never provided a copy of 4-B-2 to a third person, and did not know how the document got into the radiology file. Under these facts, we are unable to say that the court erred in finding that no waiver occurred. There was credible evidence to support the court's determination and it will not be disturbed.

## II.

The plaintiff's second claim is that the court erred in failing to exclude certain expert opinion testimony. At issue is the testimony of three doctors who were called to testify by the defendant, Dr. McSweeney. During the course of the questioning of each of these witnesses, opinion evidence was elicited and admitted into evidence over the plaintiff's objection. The plaintiff claims it was error to admit this evidence because the identity of the expert witnesses called to testify on the defendants' behalf had not been previously disclosed to the plaintiff despite plaintiff's pretrial discovery requests. See V.R.C.P. 26(b)(4) (discovery concerning experts); V.R.C.P. 26(e) (supplementation of discovery responses).

It should first be noted that the trial court has wide discretion in determining whether to allow witnesses to testify when their identity had not been disclosed before trial. *Zinn v. Tobin Packing Co.,* 140 Vt. 410, 413, 438 A.2d 1110, 1113 (1981). It should also be noted that, in the instant case, the identity of the three witnesses was disclosed to the plaintiff prior to trial. What was

not disclosed, however, was that these witnesses might be giving testimony in the form of expert opinions as opposed to merely giving factual testimony based on their experiences in treating Mr. Hartnett.

Although the parties dispute whether the testimony admitted was in fact expert opinion testimony, and also dispute whether the defendants sufficiently complied with the requirements of V.R.C.P. 26(e) in disclosing the identity of the witnesses to the plaintiff, we do not address these issues here.

Two of the witnesses gave testimony, over the objection of the plaintiff, relating to the cause of the perforation of the esophagus. This area of inquiry did not have any bearing on a material issue in the case. The opinion testimony given by the third witness concerned the ultimate issue being litigated—whether the defendants breached the appropriate standard of care in their post-operative treatment of Mr. Hartnett. We take as established the fact that the expert testimony exceeded the scope of testimony represented in pretrial discovery. Nevertheless, we cannot sustain plaintiff's claim of error on the facts of this case.

Plaintiff took no affirmative step to repair any adverse effects of the alleged surprise when the defendant first elicited expert testimony from these witnesses. He did not ask the court for a continuance, recess or adjournment in order to depose the expert or otherwise prepare for the testimony.

We again reiterate that "[w]e do not minimize the need for proper discovery procedures nor provide an out for improper practice." *Meacham* v. *Kawasaki Motors Corp.*, 139 Vt. 44, 46, 421 A.2d 1299, 1301 (1980). However, "the failure to request a continuance at the time of surprise, except under extraordinary circumstances, serves as a waiver of the party's right[s] . . . ." *Id.; Zinn* v. *Tobin, supra,* 140 Vt. at 413, 438 A.2d at 1113. The rationale underlying this principle is clear: "a litigant cannot use as grounds for [reversal] a problem which could have been cured at the time it arose." *Meacham* v. *Kawasaki Motors, supra,* 139 Vt. at 46-47, 421 A.2d at 1301.

Plaintiff has not shown extraordinary circumstances which would warrant an exception to the general rule. Thus, on the record here, we find no abuse of discretion.

## III.

The plaintiff's third claim on appeal concerns the trial court's charge to the jury.

First, the plaintiff claims that the trial court erred as a matter of law in failing to instruct the jury that a failure by the defendants to do simple, safe, efficient and reliable diagnostic tests was a breach of the requisite standard of care. Regardless of the merits of this charge, the plaintiff may not claim error for the court's failure to so charge because the plaintiff never requested the trial court to give this instruction. Pursuant to V.R.C.P. 51(b), for a party to assign error to the giving or the failure to give a specific instruction, the party must object thereto before the jury retires. See *Collette* v. *Bousley*, 141 Vt. 373, 374-75, 449 A.2d 936, 937 (1982); *McCrea* v. *State*, 138 Vt. 517, 520, 419 A.2d 318, 319 (1980). The record reveals that the plaintiff made no objection to the specific charge given and therefore has not preserved her claim for appeal.

Second, the plaintiff claims that the trial court erred, as a matter of law, in refusing to instruct the jury that the defendant, Medical Center Hospital of Vermont, could be held liable for breach of a duty owed directly to Mr. Hartnett. By court order, the plaintiff's case against the defendants was limited to a single theory: that defendants failed to timely diagnose Mr. Hartnett's condition. Plaintiff's attorney understood this limitation and so told the jury in his opening statement. The plaintiff was thus not entitled to an instruction concerning an alternative basis of liability, and no error occurred in the trial court's failure to give the requested instruction.

Third, the plaintiff claims the trial court erred in instructing the jury that it could consider the number of witnesses testifying on behalf of a party in evaluating whether the burden of proof had been met.

The superior court charged the jury as follows:

> The preponderance of the evidence does not consist merely in having a greater number of witnesses than the opposing party, for, as a wise man has said, witnesses are to be weighed and not counted, although if the witnesses are of equal credit the number on one side or the other may be taken into account. However, in the last analysis it is a question of credibility, and of this you are the sole judges.

Plaintiff contends that it was error for the court to include language in this charge that the number of witnesses may be taken into account if the witnesses are of equal credit. As the plaintiff points out, the risk in giving such a charge is that the jury will consider the number of witnesses rather than the merits of their testimony in reaching a verdict. This Court has said, however, that "the disparity in the number of witnesses testifying to a particular fact is sometimes significant and frequently is not to be overlooked nor disregarded. If the jury should regard the witnesses to be worthy of belief, the numerical strength might control." *State* v. *Coburn*, 122 Vt. 102, 108, 165 A.2d 349, 354 (1960). The number of witnesses testifying on a specific issue is "a matter which the jury may properly consider along with all other matters in determining the greater weight of the evidence on any fact situation." *Mabrier* v. *A. M. Servicing Corp.*, 161 N.W.2d 180, 184 (Iowa 1968).

■ In the instant case, the trial court carefully explained to the jury that it must evaluate the weight of the evidence and the credibility of the witnesses, and that only if the witnesses are of equal credit may their number be considered as a factor. We find no error in this instruction because, when viewed in its entirety, the charge is not misleading and does not lend itself to an erroneous interpretation that the jury may base its decision solely on the basis of the number of witnesses for each side. See *Forcier* v. *Grand Union Stores, Inc.*, 128 Vt. 389, 396, 264 A.2d 796, 801 (1970) (court's charge "is not to be considered piecemeal, but with an eye on its general content.").

■ Fourth, the plaintiff claims that the trial court erred in instructing the jury that "the doctors cannot be held liable to an error in judgment unless they have failed to use that degree of skill or care that they are required to bring to the diagnosis of a case." We find this instruction to be in accordance with law and therefore not erroneous.

Contrary to plaintiff's contention, professional negligence is not merely an error in judgment. To be actionable as negligence, an error in judgment must be inconsistent with the defendant's duty to exercise due care. *Largess* v. *Tatem*, 130 Vt. 271, 277, 291 A.2d 398, 402 (1972); *Domina* v. *Pratt*, 111 Vt. 166, 170, 13 A.2d 198, 200 (1940). The trial court's instruction properly conveyed this principle of law.

Fifth, the plaintiff claims the court erred in instructing the jury on the applicable standard of care. As no objection to this charge appears in the record, plaintiff has waived any claim of error she may have had. *Fraser* v. *Choiniere*, 133 Vt. 631, 635, 350 A.2d 755, 758 (1975) (claims of error based upon allegedly erroneous instructions not considered unless objected to at trial); V.R.C.P. 51(b).

*Affirmed.*