NOTICE: This opinion is subject to motions for reargument under V.R.A.P. 40 as well as formal revision before publication in the Vermont Reports. Readers are requested to notify the Reporter of Decisions by email at: JUD.Reporter@vermont.gov or by mail at: Vermont Supreme Court, 109 State Street, Montpelier, Vermont 05609-0801, of any errors in order that corrections may be made before this opinion goes to press.

2023 VT 43

No. 22-AP-202

| | |
|---|---|
| Energy Policy Advocates | Supreme Court |
| | |
| | On Appeal from |
| v. | Superior Court, Washington Unit, |
| | Civil Division |
| | |
| Attorney General's Office | April Term, 2023 |

Robert A. Mello, J.

Matthew D. Hardin, Washington, DC, for Plaintiff-Appellant/Cross-Appellee.

Susanne R. Young, Attorney General, and Eleanor L.P. Spottswood, Solicitor General, Montpelier, for Defendant-Appellee/Cross-Appellant.

PRESENT: Reiber, C.J., Eaton, Carroll, Cohen and Waples, JJ.

¶ 1. **WAPLES, J.** In this public-records appeal, we are called upon to determine the applicability of the work-product doctrine to communications between different state attorney general offices pursuant to executed common-interest agreements. Plaintiff Energy Policy Advocates challenges the trial court's conclusion that these communications were protected from disclosure, and further, that the trial court erred in declining to grant in-camera review of these documents. Additionally, plaintiff asserts the trial court improperly granted only half of its fees despite substantially prevailing. The Vermont Attorney General's Office (AGO) cross-appeals the trial court decision granting plaintiff any fees, arguing plaintiff is not entitled to fees as it did not

substantially prevail. For the following reasons, we affirm the trial court decision with respect to the withheld documents and reverse regarding the award of attorney's fees.

## I. Facts and Procedural History

¶ 2. Plaintiff is a nonprofit corporation with the stated mission of ensuring government transparency regarding energy and environmental policymaking. Plaintiff attempts to accomplish this mission through requests for information from state governments pursuant to statutory procedures. Here, plaintiff filed requests pursuant to the Public Records Act (PRA), 1 V.S.A. §§ 315-320, with the AGO, which were subsequently denied, and then administratively appealed. These requests sought copies of any "common[-]interest agreements" the AGO entered into mentioning carbon dioxide, greenhouse gas emissions, or National Ambient Air Quality Standards, and any resulting communications within their scope. Following denial of its administrative appeals, plaintiff initiated litigation in each matter, resulting in four separate actions which were then consolidated into one.

¶ 3. The AGO moved for summary judgment, asserting that the agreements and their related communications were protected by both the work-product doctrine and attorney-client privilege, rendering them squarely within the PRA exemption for statutory or common-law privileges, 1 V.S.A. § 317(c)(4). In conjunction with its privilege claims, the AGO provided the court with an index describing the withheld documents and the basis for their privileged status. Plaintiff opposed the motion, and requested the opportunity to file supplemental briefing regarding both the common-interest doctrine, and subsequent rulings in another case plaintiff is litigating in Minnesota, which the trial court allowed. Plaintiff also moved for in-camera review of a number of documents withheld by the AGO, including seven common-interest agreements referencing the above-mentioned terms. The trial court granted in-camera review as to the seven common-interest agreements but deferred its determination regarding the other documents.

¶ 4.     In a July 2021 order, the trial court partially granted the AGO's motion for summary judgment, ordering it to produce only the seven common-interest agreements. The court reasoned that the work-product doctrine sufficiently shielded the communications between AGOs of different states, declining to evaluate the attorney-client privilege or common-interest doctrine. However, the court did decline to shield the agreements themselves, noting that they revealed nothing about the parties' legal interests beyond the common interest at the heart of the agreement. The trial court also rejected plaintiff's arguments that the AGO failed to show that it identified all responsive documents and that the AGO's work-product argument was overbroad. It noted that nothing in the record indicated there should be concern over the adequacy of the AGO's record search. Further, it determined that plaintiff's legal-verses-political dichotomy—namely that the AGO was improperly using the work-product doctrine to veil its political activities rather than legal work—was a false dilemma because the work-product doctrine relied on no such distinction. The AGO moved for entry of final judgment, which the trial court granted in March 2022.

¶ 5.     Plaintiff then sought attorney's fees and costs, arguing that it had substantially prevailed under the PRA, 1 V.S.A. § 319(d)(1). The trial court partially granted plaintiff's motion, determining that plaintiff substantially prevailed with regard to the common-interest agreements, but that the AGO substantially prevailed with regard to the underlying communications. In light of this, the trial court awarded plaintiff 22.85 hours of fees, approximately half of that spent on the underlying litigation, and 11.6 hours of "fees on fees" for seeking the fee award, for a total of $12,381.92 inclusive of costs. Plaintiff then filed this timely appeal in which it challenges the trial court's withholding of the records it sought, refusal to order in-camera review, and failure to award plaintiff full fees and costs. The AGO filed a cross-appeal in which it challenges the trial court's award of any fees and costs, arguing that plaintiff did not substantially prevail under the PRA fee-shifting provision.

## II.  The Public Records Requests

¶ 6.    "We review a decision on a motion for summary judgment de novo, employing the same standard as the trial court." Gordon v. Bd. of Civ. Auth. for Town of Morristown, 2006 VT 94, ¶ 4, 180 Vt. 299, 910 A.2d 836.  To prevail, the moving party must demonstrate that there is no genuine issue of material fact, and that it is entitled to judgment as a matter of law.  Id.; see also V.R.C.P. 56(a).  However, "[w]e apply a deferential standard of review to trial court rulings on discovery, which are left to the sound discretion of the trial judge." Schmitt v. Lalancette, 2003 VT 24, ¶ 9, 175 Vt. 284, 830 A.2d 16.  As with other matters involving the abuse-of-discretion standard, "we will not disturb discovery rulings on appeal unless that discretion has been abused or withheld entirely."  Id.

¶ 7.    The PRA was enacted to provide for "free and open examination of records" consistent with the Vermont Constitution.  1 V.S.A. § 315(a).  In acknowledgement of this, the Court's analysis of the PRA "represents a strong policy favoring access to public documents and records." Wesco, Inc. v. Sorrell, 2004 VT 102, ¶ 10, 177 Vt. 287, 865 A.2d 350.  However, the PRA also recognizes that "all people . . . have a right to privacy in their personal and economic pursuits, which ought to be protected," 1 V.S.A. § 315(a), and it is "not meant to allow an end-run around discovery rules or determinations." Shlansky v. City of Burlington, 2010 VT 90, ¶ 8, 188 Vt. 470, 13 A.3d 1075.  Exceptions to the general policy favoring disclosure are found in 1 V.S.A. § 317(c), and relevant here, include where disclosure would "cause the custodian to violate any statutory or common law privilege" aside from the deliberative process privilege.  Id. § 317(c)(4). "We construe these exceptions strictly against the custodians of records and resolve any doubts in favor of disclosure." Wesco, Inc., 2004 VT 102, ¶ 10.  "The burden of showing that a record falls within an exception is on the agency seeking to avoid disclosure."  Id.

¶ 8.    Vermont Rule of Civil Procedure 26(b)(4) protects from discovery documents and tangible things "prepared in anticipation of litigation or for trial" unless the requesting party can

4

show a substantial need and an inability to procure the information by any other means without undue hardship. Materials containing "mental impressions, conclusions, opinions, or legal theories of an attorney or other representative of a party" regarding the litigation are absolutely protected from disclosure. V.R.C.P. 26(b)(4). While adoption of the Vermont Rules of Civil Procedure codified the work-product doctrine, this Court has held that its existence at common law predated these rules. Killington, Ltd. v. Lash, 153 Vt. 628, 644, 572 A.2d 1368, 1378 (1990) ("The Reporter's Notes suggest that the principles underlying Hickman [concerning the work-product doctrine] would have been applied by this Court even prior to the adoption of the present Rule 26, and we agree." (citing Hickman v. Taylor, 329 U.S. 495 (1947))).

¶ 9.    "The attorney-work-product rule in Hickman established a qualified privilege for witness statements prepared at the request of the attorney and an almost absolute privilege for notes taken during a witness interview." In re PCB File No. 92.27, 167 Vt. 379, 382, 708 A.2d 568, 570 (1998). Additionally, "where an agency appears as a party in a contested administrative proceeding, the attorney's work-product doctrine should be applied as if the action were in a court." Killington, Ltd., 153 Vt. at 647, 572 A.2d at 1379. "After Killington, it is clear that the Vermont common-law, work-product privilege protects notes and summaries of witness interviews . . . and we so hold." PCB File No. 92.27, 167 Vt. at 382-83, 708 A.2d at 571. Like the attorney-client privilege, the work-product protection can be waived where the party claiming the privilege had previously disclosed the document in a way which substantially increases the possibility of its adversary obtaining it. Hartnett v. Med. Ctr. Hosp. of Vt., 146 Vt. 297, 299-300, 503 A.2d 1134, 1136 (1985).

¶ 10.    In attacking the trial court's application of the work-product doctrine, plaintiff's brief can be boiled down to roughly the following arguments: (1) the trial court erred in applying the work-product doctrine where there was no existing litigation; (2) the AGO waived the work-product protections by sharing the documents outside of its office; and (3) because the AGO both

5

shared the documents outside its office and could not point to any ongoing litigation, it failed to satisfy its burden under the PRA. Plaintiff first focuses on the lack of what it describes as "in esse" litigation, or litigation that is "[i]n actual existence." See In Esse, Black's Law Dictionary (11th ed. 2019). It gleans this requirement from our opinion in Killington, where we noted in dicta that the "litigation which serves as the basis for the [work-product] claim must be in esse and not merely threatened." 153 Vt. at 647, 572 A.2d at 1379.

¶ 11. Plaintiff further argues that the trial court's decision reflects the court's "feelings that this Court got it wrong in Killington," but it is plaintiff's reading of Killington that is mistaken. The Killington Court was merely illustrating that "materials not prepared in anticipation of litigation or for trial . . . are discoverable." Id. (quotation omitted). Further, the federal case cited by the Killington Court articulating this supposed "in esse" requirement, Grolier, Inc. v. F.T.C., held that to be considered work-product, "a document must relate to the conduct of either ongoing or prospective trials," and will therefore be unprotected where prepared for a "prior . . . litigation, long completed." 671 F.2d 553, 556 (D.C. Cir. 1982), rev'd on other grounds 462 U.S. 19 (1983) (emphasis added) (quotations omitted). This reading of Killington better comports with the requirements outlined in V.R.C.P. 26(b)(4), which codifies the work-product doctrine and states that to receive protection, materials must be "prepared in anticipation of litigation or for trial."

¶ 12. This interpretation is also consistent with Vermont and federal case law, which reflect that documents prepared in anticipation of litigation are protected from disclosure by the work-product doctrine, even where litigation is not ongoing. See, e.g., Grolier Inc., 462 U.S. at 28 (holding "attorney work-product is exempt from mandatory disclosure without regard to the status of the litigation for which it was prepared"); Upjohn Co. v. United States, 449 U.S. 383, 394 (1981) ("Information . . . was needed to supply a basis for legal advice concerning . . . potential litigation." (emphasis added)); Pcolar v. Casella Waste Sys., Inc., 2012 VT 58, ¶ 14, 192 Vt. 343, 59 A.3d 702 (withholding production of documents prepared in anticipation of litigation under

6

work-product doctrine well before litigation was actually filed); <u>PCB File No. 92.27</u>, 167 Vt. at 381-82, 708 A.2d at 570 (noting that documents "prepared by an adverse party's counsel in the course of preparation for <u>possible</u> litigation are not discoverable" (emphasis added)). To the extent that <u>Killington</u> can be read to require ongoing litigation for assertion of the work-product protections, it is overruled. 153 Vt. at 647, 572 A.2d at 1379.

¶ 13. Plaintiff next argues that the trial court did not sufficiently consider whether the AGO had waived its work-product protections by sharing the confidential communications with other state's AGOs. Federal courts have held, and Vermont has recognized, that waiver of the work-product protections occurs "upon disclosure to an adversary or disclosure to a non-adversary that materially increases the likelihood an adversary can gain access to that information." <u>N.Y. Times Co. v. U.S. Dep't of Just.</u>, 939 F.3d 479, 494 (2d Cir. 2019) (quotation omitted); see <u>Hartnett</u>, 146 Vt. at 300, 503 A.2d at 1136; see also <u>In re Terrorist Attacks on Sept. 11, 2001</u>, 293 F.R.D. 539, 544 (S.D.N.Y. 2013) (stating that work-product protection is waived upon disclosure to adversary or disclosure to non-adversary that "materially increases the likelihood that an adversary can gain access to that information"); <u>Merrill Lynch & Co. v. Allegheny Energy, Inc.</u>, 229 F.R.D. 441, 445 (S.D.N.Y. 2004) ("Generally speaking, the work-product privilege should not be deemed waived unless disclosure is inconsistent with maintaining secrecy from possible adversaries.") (quotation and brackets omitted); <u>In re Sealed Case</u>, 676 F.2d 793, 817 (D.C. Cir. 1982) ("[A] party waives its work[-]product protection in civil litigation if it discloses the privileged material to anyone without common interests in developing legal theories and analyses of documents.") (quotation and ellipses omitted).

¶ 14. Plaintiff contends that "[n]ormally a privilege is waived if the privileged information is shared with a third party by the privilege holder," but plaintiff's arguments muddle the distinction between the attorney-client privilege and the work-product doctrine. The attorney-client privilege can be waived more easily than the protections of the work-product doctrine,

namely where there is a disclosure to a third-party not necessary for the provision of legal services. Stowell v. Bennett, 169 Vt. 630, 632, 739 A.2d 1210, 1211 (1999) (mem.); N.Y. State Joint Comm'n on Pub. Ethics v. Campaign for One N.Y., Inc., 37 N.Y.S.3d 851, 861 (N.Y. Sup. Ct. 2016). In contrast, the work-product doctrine is waived "upon disclosure to an adversary or disclosure to a non-adversary that materially increased the likelihood an adversary can gain access to that information." N.Y. Times Co., 939 F.3d at 494. Plaintiff maintains that any disclosure to a third-party or breach of confidentiality invalidates both protections, but this misconstrues the subtle yet important difference between them. See Westinghouse Elec. Corp. v. Republic of Philippines, 951 F.2d 1414, 1428 (3d Cir. 1991) ("Because the work-product doctrine serves instead to protect an attorney's work product from falling into the hands of an adversary, a disclosure to a third party does not necessarily waive the protection of the work-product doctrine.").

¶ 15. Here, the documents and communications at issue were shared by the AGO with the AGOs of other states in an effort to unify its strategy and conserve resources with regard to environmental litigation that the AGO has considered pursuing or predicted defending against. The very nature of disclosing these documents to the chief law enforcement officer in the respective state only bolsters that these documents were prepared in anticipation of litigation. Further, in contrast to plaintiff's characterization, these documents and communications were disclosed in a way calculated to preserve confidentiality, not in a way that materially increased the likelihood of an adversary obtaining them. See O'Boyle v. Borough of Longport, 94 A.3d 299, 318 (N.J. 2014) (holding work-product doctrine is not waived where disclosure was "in a manner calculated to preserve its confidentiality"). Finally, the common-interest agreements themselves, which elaborate on the scope of the parties' mutual interests and intent to keep all communications confidential, also support application of the work-product protections.

¶ 16. Plaintiff also argues that the trial court erred in failing to grant in-camera review of the documents as well as failing to hold the AGO to its burden of proving both that the work-product protections apply, and that the documents at issue were protected from disclosure under the PRA. Plaintiff argues that because the Vaughn index produced by the AGO illustrates that the documents at issue were shared outside its office and not connected to any "in esse" litigation, the AGO has failed to satisfy its burden and plaintiff is entitled to disclosure, or in the alternative, in-camera review. These arguments fail for the reasons articulated above.

¶ 17. The PRA leaves in-camera review to the discretion of the trial court, noting it "may examine the contents of such agency records in camera." 1 V.S.A. § 319(a) (emphasis added). Thus, we review a court's decision of whether to hold in-camera review for an abuse of discretion. Schmitt, 2003 VT 24, ¶ 9. There has been no such error here. First, the trial court did not opt for a blanket denial, instead granting plaintiff's request to review the seven common-interest agreements, which it ultimately ordered produced. Additionally, the trial court was not required to exercise its discretion to carry out in-camera review as characterized by plaintiff. Finally, given the trial court's ultimate decision on withholding the documents, it is clear that it did not consider the lack of "in esse" litigation or the fact that the AGO shared the documents with outside offices as defeating the work-product protections, and therefore properly chose not to exercise its discretion in ordering in-camera review.

¶ 18. Plaintiff claims that "officers of the court are required to demonstrate claims of privilege through various means," including in-camera review. But this cannot be, as in-camera review is at the discretion of the court, as noted above, and can only be requested by parties. Additionally, the policy ramifications of plaintiff's proposed burden of proof would be to require in-camera review every time a privilege is claimed. It is undisputed that the AGO had the burden of proof, both to show that the requested records fit within an exception to the PRA as well as to show that a privilege applied. Wesco, 2004 VT 102, ¶ 10 ("The burden of showing that a record

9

falls within an exception is on the agency seeking to avoid disclosure."); State v. Kennison, 149 Vt. 643, 648, 546 A.2d 190, 193 (1987) (noting that claimant of privilege bears burden of proving they are entitled to it). In evaluating whether the AGO met that burden, the trial court properly considered the evidence before it, including the Vaughn index and common-interest agreements, which it reviewed in-camera, and determined that the records are protected from disclosure by the work-product doctrine.

¶ 19. For these reasons, the trial court decision withholding the documents is affirmed. Because our affirmance requires neither discussion of the attorney-client privilege nor the common-interest doctrine, we decline to speculate on their application here.

### III. Attorney's Fees and Costs

¶ 20. We review the lower court's decision with respect to attorney's fees and costs under the PRA for abuse of discretion: "the decision will stand on appeal unless the [moving] party shows that the court either failed to exercise its discretion altogether or exercised it for reasons that are clearly untenable or unreasonable." Herald Ass'n v. Dean, 174 Vt. 350, 359-60, 816 A.2d 469, 477-78 (2002). The PRA requires that where a complainant has substantially prevailed in litigation seeking public records, "the court shall assess against the public agency reasonable attorney's fees and other litigation costs reasonably incurred." 1 V.S.A. § 319(d)(1). Whether a party has substantially prevailed has historically been based on the facts and circumstances of the individual case, with no simple mathematical formula based on a "net verdict." Fletcher Hill, Inc. v. Crosbie, 2005 VT 1, ¶ 15, 178 Vt. 77, 872 A.2d 292. In Burlington Free Press v. University of Vermont, we held that the "requesting party must prove that legal action could reasonably be regarded as necessary to obtain the requested documents, and that in fact the litigation had a substantial causative effect on the release of the documents." 172 Vt. 303, 305, 779 A.2d 60, 63. Both plaintiff and the AGO appeal the trial court's award of attorney's fees, with plaintiff arguing the trial court

erred in failing to award it full attorney's fees and the AGO arguing that the trial court abused its discretion in awarding plaintiff any attorney's fees.

¶ 21. The parties, however, agree the trial court abused its discretion in bifurcating the fee award. In J & K Tile Co. v. Wright & Morrissey, Inc., we disclaimed the kind of parsing of claims for the purposes of awarding attorney's fees which the trial court undertook here. 2019 VT 78, ¶ 37, 211 Vt. 179, 222 A.3d 936 ("The court should have determined who was the substantially prevailing party as a whole, considering all the claims together."). The canons of statutory interpretation further support this, because to allow such a parsing of claims would essentially mandate the award of attorney's fees for any legal victory, no matter how small. This is an absurd result which we will not sanction. See Weitz v. Weitz, 2019 VT 35, ¶ 20, 210 Vt. 248, 213 A.3d 1102 (noting statutes "should be interpreted in a way that avoids absurd results" (quotation omitted)). Thus, the trial court abused its discretion in bifurcating plaintiff's claims for the purpose of awarding attorney's fees.

¶ 22. Plaintiff next argues that where it has prevailed on "any of the issues it has raised in this Court," the trial court's "ruling on fees is rendered infirm." We have previously noted in Fletcher Hill, Inc., that to require an award based on a bare net judgment would be to "effectively write out the modifier 'substantially.'" 2005 VT 1, ¶ 17 (quotation omitted). To accept the interpretation advocated by plaintiff would contravene our rules of statutory construction because it would render parts of the statute superfluous. Baldauf v. Vt. State Treasurer, 2021 VT 29, ¶ 19, 215 Vt. 18, 255 A.3d 731. We also noted in Fletcher Hill that "the use of the words 'the substantially prevailing party' does not imply that there must be a substantially prevailing party in every case," but that "there can be, at most, one." 2005 VT 1, ¶ 14 (emphasis omitted) (citation omitted). It cannot be said that plaintiff has substantially prevailed here.

¶ 23. Plaintiff argues that because it essentially prevailed on two of the underlying four lawsuits, which were ultimately consolidated into a single matter, it has substantially prevailed

11

such that it is entitled to attorney's fees. However, plaintiff cannot now retroactively apply the court's decision to the four original dockets which it agreed to consolidate. Plaintiff agreed to consolidate the matter and must now abide by that decision in seeking attorney's fees. Therefore, its percentage of victory should not be evaluated based on which of the original four cases it may have prevailed in. Additionally, plaintiff argues that it has substantially prevailed below, yet asks us to reverse almost the entire trial court ruling, including its ruling on the vast majority of documents, which it determined were properly withheld. While plaintiff is entitled to argue alternative case theories, the Court cannot help but take notice of this glaring contradiction. We therefore decline plaintiff's invitation to award its entire costs and fees on the basis of a bare net judgment and reverse and vacate the trial court's award of attorney's fees because plaintiff did not substantially prevail. See id. ¶ 17.

The judgment of the superior court to withhold documents under the Public Records Act is affirmed. The award of attorney's fees is reversed.

FOR THE COURT:

_____

Associate Justice