VERMONT SUPREME COURT
109 State Street
Montpelier VT 05609-0801
802-828-4774
www.vermontjudiciary.org



Case No.        24-AP-351

*Note: In the case title, an asterisk (\*) indicates an appellant and a double asterisk (\*\*) indicates a cross-appellant. Decisions of a three-justice panel are not to be considered as precedent before any tribunal.*

## <u>ENTRY ORDER</u>

JULY TERM,   2025

George Woods, Jr.\* v. Department of
Corrections

}
}
}
}
}
}

APPEALED FROM:

Superior Court, Caledonia Unit,
Civil Division
CASE NO. 24-CV-01144
Trial Judges: Daniel P. Richardson (merits);
Benjamin D. Battles (reconsideration)

In the above-entitled cause, the Clerk will enter:

Petitioner George Woods, Jr., self-represented, appeals from civil division orders: (1) upholding a Vermont Department of Corrections case-staffing decision interrupting his community-supervision furlough status for the remainder of his sentence; and (2) denying his request to reconsider this determination on several grounds, including allegations of ineffective assistance of counsel. We affirm.

## I. Applicable Law

The Department may release an individual in its custody who has served the minimum term of their total effective sentence on community-supervision furlough if that individual, among other things, "agrees to comply with such conditions of supervision the Department, in its sole discretion, deems appropriate for that person's furlough." 28 V.S.A. § 723(a)(3). "The offender's continued supervision in the community is conditioned on . . . the offender's compliance with any terms and conditions identified by the Department." Id. § 723(b).

Department Directive 430.11 governs the "staff response standards to be used when dealing with violating behavior of individuals on furlough." Vermont Department of Corrections Directive 430.11, Response to Furlough Violations [hereinafter Directive 430.11], Purpose, https://web.archive.org/web/20250306055433/https://outside.vermont.gov/dept/DOC/Policies/Response%20To%20Furlough%20Violations%20Policy.pdf     [https://perma.cc/2NAM-2W4N] (effective July 1, 2023, through April 22, 2025).[1]   Where the alleged behavior constitutes a

---

[1]   All citations to Directive 430.11 herein refer to the version in effect at the time of petitioner's case-staffing determination. It has since been superseded by an amended version. See Vermont Department of Corrections Directive 430.11, Response to Furlough Violations,

"significant violation" or the supervised individual presents a danger to themself or others, the Department may return the individual to a correctional facility and proceed with the furlough-revocation process, including a furlough-violation hearing. Id. § E. Upon the outcome of that hearing, "the supervised individual will either be released, or the case will go through the case staffing determination process." Id. § E(7). Directive 430.11 enumerates the considerations the case-staffing committee should weigh in determining the appropriate response to a furlough violation, including the existence of prior significant violations and the individual's risk score. Id. §§ D, G.

Where the Department determines that it is appropriate to revoke or interrupt an individual's furlough status for more than ninety days based on a "technical violation"—that is, a violation of furlough conditions that does not constitute a new crime—the individual has the right to appeal to the superior court under Vermont Rule of Civil Procedure 74. 28 V.S.A. §§ 722(4), 724(c)(1), (d)(1). The appeal "shall be limited to determine whether the decision to interrupt or revoke an offender's community supervision furlough status was an abuse of discretion by the Department." Id. § 724(c)(2). As pertinent here, the statute provides:

> It shall be abuse of the Department's discretion to revoke furlough or interrupt furlough status for 90 days or longer for a technical violation unless:
>
> (1) The offender's risk to reoffend can no longer be adequately controlled in the community, and no other method to control noncompliance is suitable.
>
> (2) The violation or pattern of violations indicate the offender poses a danger to others.

Id. § 724(d).

The appellant has the burden of proving that the Department abused its discretion by a preponderance of the evidence. Id. § 724(c)(1). While the appeal is based on the civil division's "de novo review of the record," the appellant has the right to testify "and, in its discretion for good cause shown, the court may accept additional evidence to supplement the record." Id. "If additional evidence is accepted by the court, the Department . . . shall have the opportunity to present rebuttal evidence, including testimony, for the court's consideration." Id.

## II. Factual & Procedural Background

Petitioner was released on community-supervision furlough in August 2023. The Department returned him to a correctional facility in January 2024 based on multiple alleged violations of his furlough conditions. Following a furlough-violation hearing, the Department found that petitioner had violated several of his conditions. In March 2024, the Department made its case-staffing determination. For the reasons discussed below, it concluded that a two-year furlough interrupt was appropriate under Directive 430.11. Because such an interrupt would exceed petitioner's maximum sentence, the case-staffing committee determined that petitioner was ineligible for furlough for the remainder of his sentence.

---

https://outside.vermont.gov/dept/DOC/Policies/Response%20To%20Furlough%20Violations%20Policy.pdf [https://perma.cc/5BTY-KMZ3] (effective April 23, 2025).

Petitioner timely appealed to the civil division under Rule 74 and 28 V.S.A. § 724(c). An attorney from the Prisoners' Rights Office subsequently entered an appearance on his behalf. Through counsel, petitioner sought permission to present testimony from three additional witnesses: his drug-and-alcohol counselor; his recovery coach; and his ex-wife, R.W. The Department opposed the request, and both parties filed memoranda of law in support of their respective positions. The court ruled that petitioner could call his counselor and recovery coach and that the Department was therefore entitled to call rebuttal witnesses under § 724(c)(1). It held, however, that petitioner had not made the showing of good cause necessary to allow R.W.'s testimony.

An evidentiary hearing was scheduled for August 2024. The Department moved to continue the hearing on the ground that its rebuttal witness, Thomas Dunn—who had been petitioner's probation officer—would be on vacation and unavailable at that time. Petitioner opposed the request. The court denied the motion, explaining that continuing the hearing would result in substantial delay and noting that the Department was free to subpoena Mr. Dunn, call an alternate rebuttal witness, or rely on the administrative record.

At the hearing, the court took testimony from petitioner, his two witnesses, and the Department's substitute rebuttal witness, Joshua Rutherford. It subsequently issued a written decision including the following findings.

The convictions giving rise to petitioner's sentence involve domestic abuse against his ex-wife, R.W. Petitioner and R.W. have an ongoing relationship and share a history involving relief-from-abuse petitions and intermittent issues of violence. Petitioner has experienced long-term struggles with his mental health and substance use. He has a deep connection with and reliance on R.W., and she continues to care for petitioner and is willing to provide him with support. When petitioner's substance-abuse or mental-health issues are unchecked, however, R.W. is the likely target of his anger and outbursts.

Petitioner was previously released on community-supervision furlough status in connection with the same underlying sentence, but received an 180-day interrupt following an October 2022 incident. He is scored as a high-risk offender under the Ohio Risk Assessment System (ORAS).

Petitioner's August 2023 furlough release was initially conditioned on a requirement that he secure housing. He did so through the Barre Community Justice Center (CJC). Petitioner also agreed to several furlough conditions, including requirements that he: (1) follow all CJC housing facility rules; (2) abide by an 8:00 p.m. to 6:00 a.m. curfew; and (3) neither enter nor inhabit any residence his supervising officer "has denied based on risk to the public and/or [petitioner's] victim(s)." The Department also determined that petitioner's contact with R.W. needed to be monitored and limited to keep R.W. safe from an outburst—which, given petitioner's history, was highly likely. Therefore, with respect to the residence condition discussed above, petitioner's supervising officer directed petitioner not to go to or stay at R.W.'s home.

Petitioner struggled with his transition from the correctional facility to the community. The Department connected petitioner with a mental-health specialist; it had also previously endeavored to engage him with a domestic-violence counselor. Though the Department set clear limitations on petitioner's contact with R.W., he resisted these conditions and pushed for more contact with her.

In early October 2023, petitioner self-reported a relapse into drug use. Later that month, he began seeking treatment for his addiction and simultaneously ceased receiving treatment for his mental health. Petitioner worked with his drug-and-alcohol counselor and recovery coach— neither of whom provided mental-health treatment—and made active efforts to address his substance-use issues. Petitioner acted reasonably in prioritizing addiction treatment during the fall of 2023, a time when his mental health appeared stable.

In January 2024, however, petitioner's mental health began to deteriorate. The Department imposed several intermediate methods in an effort to control petitioner's compliance with his furlough conditions, including: a meeting to review and revise those conditions; use of a GPS-monitoring device; repeated warnings to petitioner not to stay with R.W.; increased supervision and more frequent meetings with his supervising officers; and efforts to help petitioner develop a plan to address panic attacks and crisis moments using transportation and meeting places compliant with his conditions. On January 17, petitioner reported to his supervising officers and housing coordinator that he was no longer taking his prescribed medication.

By Friday, January 19, petitioner had become uneasy with the CJC housing facility and the energy he felt it was projecting. He felt uncomfortable and unsafe in the building and complained of physical manifestations of growing anxiety. That day, petitioner met with his supervising officer, who reiterated that petitioner's furlough conditions prohibited him from visiting or staying at R.W.'s home.

Shortly after the meeting, petitioner left the CJC housing facility. He contacted R.W., who picked him up and allowed him to return to her home, where he stayed over the weekend. During this time, petitioner contacted several mental-health providers and sought emergency housing. He kept his GPS-monitoring unit charged and on his person. Petitioner explained that because of his mental health, he was compelled to go to R.W.'s home where he felt safe. He blamed the Department for failing to connect him with a mental-health provider and believed that his decision was justified in the context of his condition.

On Monday, January 22, petitioner communicated to his supervising officers that he had violated his curfew and residence conditions by spending the weekend with R.W. The Department also received a letter from the CJC indicating that it had terminated petitioner's housing agreement based on his conduct over the weekend. Petitioner reported to the probation office voluntarily at the direction of his supervising officer. There, he was placed in custody and returned to a correctional facility.

In March 2024, the Department conducted its case-staffing determination and concluded that petitioner was ineligible for furlough for the remainder of his current sentence under Directive 430.11. This determination was based on a variety of factors, including: that this was petitioner's second significant violation; petitioner's high ORAS score and demonstrated pattern of risk-related behaviors; the fact that the Department's previous interventions had failed to mitigate the risks; and the committee's conclusions that the Department could no longer adequately control petitioner's risk to reoffend and that he posed a danger to others.

In its decision, the civil division explained that there was no factual dispute as to whether petitioner violated the terms and conditions of his furlough: he violated conditions requiring him to adhere to his curfew, stay away from R.W.'s home, and abide by the CJC housing facility rules. Moreover, as a result of these violations, petitioner lost his housing and was left in a

situation in which he was likely to be more dependent on R.W.—thus increasing the probability of further violations. On this basis, the court concluded that the Department did not abuse its discretion in determining that petitioner's risk to reoffend could no longer be adequately controlled in the community and that no other method to control noncompliance was suitable, see 28 V.S.A. § 724(d)(1), and that petitioner's pattern of violations indicated that he posed a danger to others, see id. § 724(d)(2). It further explained that because petitioner scored as a high-risk offender and the events of January 2024 marked his second substantial offense within a year, Directive 430.11 indicated that a two-year furlough interrupt was an appropriate sanction. See Directive 430.11, § G (providing that case-staffing committee's final determination in cases related to significant violations of furlough should be guided by sanctions grid providing that two-year interrupt is appropriate sanction for high-risk offender's second significant violation). The court therefore concluded that the Department's determination complied with Directive 430.11 and § 724 and held that petitioner failed to demonstrate any abuse of discretion.

Petitioner—at this point again self-represented—timely moved for reconsideration under Vermont Rule of Civil Procedure 60(b). He raised numerous arguments in support of his request, including an assertion that he received ineffective assistance of counsel in connection with the Rule 74 appeal.

The court denied the motion. It noted that while this Court has yet to address the question of whether there is a right to effective assistance of counsel in a furlough-violation appeal, assuming there was, petitioner could not make the necessary showing of prejudice. It explained that none of the alleged deficiencies in representation related to the court's dispositive findings that petitioner violated three of his furlough conditions, this was his second substantial offense, and the Department had scored him as a high-risk offender. The court also held that petitioner failed to identify any other ground for reconsideration, noting that he sought to relitigate issues that had already been decided based, at least in part, on additional materials outside the record. This appeal followed.

III. Analysis

Before turning to petitioner's arguments, we address three motions pending before this Court and clarify the scope of our review.

Petitioner filed two of the pending motions. In the first, he alleged that Department employees refused to make copies of his principal brief, resulting in a delay in filing, and requested that we issue an order directing the Department to refrain from engaging in conduct that would prolong this appeal. Insofar as petitioner timely filed his principal brief on the same date, the motion is denied as moot. To the extent the motion sought additional or different relief in connection with petitioner's references to a recording and several unspecified inmate grievances, we are unable to discern any related argument and therefore do not address this request. See V.R.A.P. 27(a)(2)(A) (requiring that motion filed with this Court "state with particularity the grounds for the motion and the order or relief sought"). In the second motion, petitioner appears to seek a declaratory judgment from this Court prohibiting the Department from engaging in certain allegedly unlawful practices in relation to this case and others. Vermont's Declaratory Judgments Act vests "Superior Courts within their jurisdictions" with the "power to declare rights, status, and other legal relations." 12 V.S.A. § 4711. This Court has jurisdiction over appeals from trial court declarations rendered under the Act, but we do not have original jurisdiction over claims for declaratory judgment. See id.; 4 V.S.A. § 2. Because this Court is without the power to grant petitioner the requested relief, the motion is denied.

Finally, the Department moved to strike a portion of petitioner's opposition to its motion for an extension of time, arguing that it improperly addressed substantive legal issues that were or should have been raised in petitioner's principal brief. While we decline to strike any portion of petitioner's filing and therefore deny the motion, we note that this Court will address only those arguments raised in petitioner's principal brief. State v. Voog, 2012 VT 1, ¶ 17, 191 Vt. 183 (declining to consider argument not raised in appellant's principal brief). Similarly, we do not consider those contentions petitioner raises for the first time in his reply brief. Robertson v. Mylan Lab'ys, Inc., 2004 VT 15, ¶ 2 n.2, 176 Vt. 356 ("We need not consider an argument raised for the first time in a reply brief.").

This leads us to a final preliminary point. "[O]ur review is confined to the record and evidence adduced at trial," and "[o]n appeal, we cannot consider facts not in the record." Hoover v. Hoover, 171 Vt. 256, 258 (2000); see V.R.A.P. 10(a). Rule 28(a)(4) thus requires that an appellant's brief include "citations to the . . . parts of the record on which the appellant relies." See also In re S.B.L., 150 Vt. 294, 297 (1988) (explaining that "[i]t is the burden of the appellant to demonstrate how the lower court erred warranting reversal," and this Court "will not comb the record searching for error"). Although self-represented litigants "receive some leeway from the courts," they are still bound by the relevant procedural rules, including the minimum briefing standards of Rule 28(a)(4). Zorn v. Smith, 2011 VT 10, ¶ 22, 189 Vt. 219; see Pcolar v. Casella Waste Sys., Inc., 2012 VT 58, ¶ 19, 192 Vt. 343 (declining to address argument raised by self-represented party that did not satisfy V.R.A.P. 28(a)(4)).

As the Department points out, many of petitioner's arguments are predicated on factual assertions that are either not supported by record citation or supported only by citation to documents that are not part of the record on appeal. We decline to consider those arguments falling into the first category because they are inadequately briefed, see Pcolar, 2012 VT 58, ¶ 19, and cannot consider those within the second because our review is limited to the record on appeal, see Hoover, 171 Vt. at 258.

With this understanding, we take up petitioner's remaining arguments. He assigns error to the civil division's denial of his motion to reconsider and its decision on the merits. We address his challenges to each order in turn.

A. Reconsideration

"We will uphold the trial court's denial of a [Rule] 60(b) motion unless the moving party shows that the court abused its discretion." John A. Russell Corp. v. Bohlig, 170 Vt. 12, 24 (1999). While the rule allows the court to grant relief from judgment in appropriate circumstances, it "does not protect a party from tactical decisions which in retrospect may seem ill advised, and it is not an open invitation to reconsider matters concluded at trial." Penland v. Warren, 2018 VT 70, ¶ 7, 208 Vt. 15 (quotations and citations omitted).

Petitioner first argues that the trial court erred in declining to grant relief on the basis of his ineffective-assistance argument. As the civil division recognized, we have yet to determine whether there is a right to effective assistance of counsel in furlough-revocation appeals. See Davis v. Dep't of Corrs., No. 22-AP-129, 2023 WL 2473539, at *3 (Vt. Mar. 10, 2023) (unpub. mem.) [https://perma.cc/DLD6-SRD2]. We need not do so here. The court did not err in concluding that if such a right exists, the deficiencies petitioner alleged could not satisfy the relevant test as a matter of law.

6

"Vermont uses a two-part standard for evaluating an ineffective assistance of counsel claim—a test that is essentially equivalent under the United States and Vermont constitutions." In re Combs, 2011 VT 75, ¶ 9, 190 Vt. 559 (mem.); see, e.g., In re K.F., 2013 VT 39, ¶ 22, 194 Vt. 64 (declining to address whether parents have right to challenge effectiveness of counsel in termination-of-parental-rights proceeding because assuming such right existed, father's allegations, if true, could not satisfy ineffective-assistance test applied in criminal context). First, the proponent of the claim must show by a preponderance of the evidence that the attorney's performance "fell below an objective standard of reasonableness informed by prevailing professional norms." Combs, 2011 VT 75, ¶ 9 (quotation omitted). The second prong requires the proponent to prove that counsel's performance resulted in prejudice "by demonstrating a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. (quotation omitted). A "reasonable probability" is one "sufficient to undermine confidence in the outcome," and "not merely an abstract possibility." In re Burke, 2019 VT 28, ¶ 18, 210 Vt. 157 (quotations omitted). Both prongs of the test present mixed questions of law and fact. In re FitzGerald, 2020 VT 14, ¶ 32, 212 Vt. 135.

Petitioner argues that his attorney "allowed the State to confuse the court by letting the [Department] only raise a couple arguments." He does not explain, however, how his attorney could have compelled the Department to raise additional arguments on appeal. Nor does he identify any record support for his assertion that the manner in which the Department responded to his appeal resulted in prejudice. Petitioner further claims that his attorney failed to perform an investigation and introduce certain evidence that, he believes, would have proved the Department's allegations to be false and supported an entry of summary judgment in his favor.[2] Petitioner's failure to adequately describe the evidence in question, however, leaves us without the ability to meaningfully engage with this argument. Petitioner also asserts that his attorney was deficient in "allow[ing] the [Department] not to respond to initial governmental action in violation of Rules 12 [and] 13." Though petitioner appears to be referencing Civil Rules 12 and 13, they govern Rule 74 actions only "so far as applicable." V.R.C.P. 74(g). Petitioner has not identified a basis to conclude that those rules apply here. Petitioner further contends that his attorney failed to challenge "all due process violating behaviors caused through the [Department's] neglect." However, petitioner's references to the conduct in question either lack the specificity necessary for us to evaluate this claim or appear to be predicated on documents outside the record on appeal. Accordingly, we do not consider this argument. See State v. Bergquist, 2019 VT 17, ¶ 64 n.13, 210 Vt. 102 ("We will not consider issues, even those of a constitutional nature, that are insufficiently raised and inadequately briefed."); Hoover, 171 Vt. at 258. Finally, petitioner claims that his attorney should have objected to the Department presenting testimony from Mr. Rutherford as a substitute rebuttal witness because he was denied his right to cross-examine Mr. Dunn. Petitioner's attorney did object to Mr. Rutherford's testimony on the grounds that he did not participate in the Department's case-staffing decision. The court overruled the objection, but held that Mr. Rutherford could offer only general

---

[2] Plaintiff also contends that this evidence would have supported an action under Vermont's Innocence Protection Act, 13 V.S.A. §§ 5572-5578. This is irrelevant to his ineffective-assistance argument, however, because the court's inquiry necessarily focuses on the potential impact of any deficiency in representation on the outcome of the underlying proceeding. See Burke, 2019 VT 28, ¶ 18. Petitioner does not explain how the discovery of evidence that could give rise to a separate action would have any bearing on his furlough-revocation appeal.

7

testimony about the case-staffing process and could not speak to the decisions made in petitioner's case. In this context, it is not clear how Mr. Rutherford's testimony could have given rise to prejudice. Whether Mr. Dunn should have been compelled to testify is a separate question from whether the court erred in accepting Mr. Rutherford's testimony. To the extent petitioner suggests counsel should have taken some action to compel Mr. Dunn's testimony, he has not adequately briefed this argument. See Pcolar, 2012 VT 58, ¶ 19.

As noted above, the issues for the civil division were limited: by statute, it had jurisdiction to determine only whether the Department abused its discretion in interrupting petitioner's furlough status. See 28 V.S.A. § 724(c)(2). The trial court explained that none of the deficiencies in representation that petitioner alleged could have impacted its dispositive findings on this point. For the reasons discussed above, petitioner has not shown that the trial court erred in concluding that he failed to identify a "reasonable probability" that the alleged deficiencies impacted the result of the proceeding. See Combs, 2011 VT 75, ¶ 9. The court did not err in denying petitioner's motion to reconsider on this ground.

Petitioner also contends that the court erred in concluding that he failed to identify any other basis for reconsideration. He argues that relief was appropriate under Rule 60 because he asserted that the court erred in relying on "fabricated" information. On this point, petitioner seems to suggest that the court made findings based on information in the administrative record attributable to Mr. Dunn that he believes was contradicted by testimony offered at the hearing. As discussed above, however, the civil division's review is "based on a de novo review of the record," though it may—as it did here—"accept additional evidence to supplement the record." 28 V.S.A. § 724(c)(1). The court thus acted appropriately in considering both the administrative record and the additional evidence offered at the hearing, and it was for the trial court to weigh that evidence and assess its credibility. See Mullin v. Phelps, 162 Vt. 250, 261 (1994). The court appropriately concluded that petitioner sought to relitigate issues that had already been decided and acted within its discretion in declining to grant reconsideration on this basis. See Penland, 2018 VT 70, ¶ 7.

## B. Merits

In reviewing the civil division's order on the merits of petitioner's appeal, we will uphold its factual findings unless there is no reasonable or credible record evidence to support them. Kneebinding, Inc. v. Howell, 2018 VT 101, ¶ 26, 208 Vt. 578; see Davis, 2023 WL 2473539, at *4. We will not disturb the trial court's legal conclusions provided they are reasonably supported by the findings and made pursuant to the correct legal standard. Kneebinding, 2018 VT 101, ¶ 26.

We first note that many of petitioner's challenges to the merits of the civil division's order track those he raised in support of his ineffective-assistance claim. These arguments are not preserved for our review on appeal because—as petitioner acknowledges—his attorney did not raise them below.[3] State v. Ben-Mont Corp., 163 Vt. 53, 61 (1994) ("To properly preserve

---

[3] Though petitioner appears to suggest that he preserved these arguments in his self-represented Rule 74 petition, counsel subsequently appeared on his behalf. It was petitioner's burden to prove that the Department abused its discretion, and the trial court did not err in limiting its analysis to the arguments advanced by counsel. 28 V.S.A. § 724(c)(1); cf. Est. of Alden v. Dee, 2011 VT 64, ¶ 35, 190 Vt. 401 (recognizing that representations of party's attorney within scope of attorney-client relationship are attributable to party).

an issue for appeal a party must present the issue with specificity and clarity in a manner which gives the trial court a fair opportunity to rule on it."). Because petitioner does not argue plain error, we do not address these arguments. Follo v. Florindo, 2009 VT 11, ¶ 16, 185 Vt. 390 (noting that in civil cases, we consider unpreserved arguments under plain-error review "only in limited circumstances"); see State v. Lyddy, 2025 VT 1, ¶ 19 (declining to address unpreserved issue absent plain-error argument).

To the extent petitioner seeks to challenge the validity of his furlough conditions, we note that even if these arguments had been preserved, we would decline to consider them as beyond the scope of this appeal. By statute, the Department has "sole discretion" to determine the conditions of supervision appropriate for an individual's furlough, 28 V.S.A. § 723(a)(3), and the Rule 74 proceeding below was expressly "limited to determine whether the decision to interrupt or revoke [petitioner's] community supervision furlough status was an abuse of discretion," id. § 724(c)(2).

Petitioner argues that the civil division erred in concluding that he had not shown "good cause" to present testimony from R.W. under 28 V.S.A. § 724(c)(1). The trial court has discretion in ruling on the admission or exclusion of evidence, and we will not disturb its decision absent a showing that such discretion was abused or entirely withheld and that the ruling resulted in prejudice to a party's substantial rights. Inouye v. Estate of McHugo, 2024 VT 75, ¶ 26. Here, the court reasoned that the opportunity to present additional evidence was, at its core, a corrective provision available where the administrative record on which it otherwise was to base its decision could contain factual inaccuracies. R.W.'s proffered testimony that she did not feel petitioner presented a threat to her, the court explained, did not fall within this category because there was no evidence in the record that the Department's public-safety conclusion was "tied exclusively to her." Similarly, the court concluded that the testimony she proposed to offer about petitioner's mental-health condition would neither add to nor contradict the information in the administrative record. Petitioner does not meaningfully address the court's analysis on this point and has not shown that it abused its discretion in relying on either of these rationales. See id.

Petitioner also argues that the civil division erred in allowing Mr. Rutherford to testify because he did not have knowledge of the circumstances underlying petitioner's furlough interrupt.[4] As noted above, however, the court did not permit Mr. Rutherford to testify on this point—it concluded that he could offer only general testimony about the case-staffing process. Petitioner has not identified any abuse of discretion. See id.

Finally, petitioner appears to challenge several of the court's factual findings. We do not address the majority of these arguments because they are based on assertions and material outside the record on appeal. See Pcolar, 2012 VT 58, ¶ 19; Hoover, 171 Vt. at 258. To the extent that they are not, petitioner fails to make the requisite showing that there is no reasonable or credible evidence within the record to support the court's findings. See id; Kneebinding, 2018 VT 101, ¶ 26.

---

[4] We do not address petitioner's related contention that Mr. Rutherford's testimony in some unspecified manner violated Vermont's Open Meeting Law, 1 V.S.A. § 312, because it is inadequately briefed. See In re Snyder Grp., Inc., 2020 VT 15, ¶ 26 n.10, 212 Vt. 168 (declining to consider argument consisting of single sentence as inadequately briefed).

We have considered all arguments discernable in petitioner's brief and conclude that each is without merit. Petitioner has not demonstrated that the trial court erred in concluding that the Department acted within its discretion in revoking his furlough for the remainder of his sentence.

Affirmed.

BY THE COURT:

_____
Paul L. Reiber, Chief Justice


_____
Karen R. Carroll, Associate Justice


_____
Nancy J. Waples, Associate Justice

10